NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————  :
                                                     :
**JENNIFER DECOSTA,**                                :
                                                     :        **Civil Action No. 11-2651 (MAH)**
                 **Plaintiff,**                      :
                                                     :
         **v.**                                      :                **OPINION**
                                                     :
**BARBARA G. ENGLISH, et al.,**                      :
                                                     :
                                                     :
                 **Defendants.**                     :
                                                     :
                                                     :
———————————————————————  :

**HAMMER,** Magistrate Judge.

This matter comes before the Court by way of the motion of defendants Barbara G. English and BGE Productions ("BGE") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 15]. Also before the Court is plaintiff Jennifer DeCosta's motion to amend the Complaint [ECF No. 17]. The Court has considered the submissions and rules on the motions on the papers pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court grants in part and denies in part defendants' motion to dismiss. Additionally, the Court grants in part and denies in part plaintiff's motion to amend the Complaint.

## I. <u>BACKGROUND</u>

A.      Facts

Plaintiff alleges that in early May 2010, Tony Locascio, an attorney, informed DeCosta that his friend, Barbara English, had written a book and wanted to make it into a movie. (Am. Compl., Harmatz Decl. Ex. A at 14 ¶ 9, ECF No. 22.) Locascio told DeCosta that he thought English could

benefit from DeCosta's experience and knowledge of the "industry."  (*Id.*)  Locascio asked DeCosta if she knew anyone who might be interested in investing in English's project and, after their conversation, DeCosta contacted some people she knew in the industry.  (*Id.* at 15 ¶¶ 10-11, ECF No. 22.).  Locascio also arranged a phone conference with DeCosta, English and himself.  (*Id.* at 15 ¶ 12, ECF No. 22.)  Thereafter, and throughout the time period during which DeCosta's claims arose, English contacted DeCosta on a daily basis for professional advice and guidance. (*Id.* at 15 ¶ 13, ECF No. 22.)

On or about May 19, 2010, Locascio drafted a management contract between DeCosta and English, (*Id.* at 15 ¶ 15, ECF No. 22) and English hired DeCosta to be her manager.  (Compl. ¶¶ 7, 8, ECF No. 1-1; *Id.* at 15 ¶¶ 14, 16, ECF No. 22.)  After English formed BGE Productions, English made DeCosta the Executive Vice President of BGE.  (Compl. ¶¶ 9, 10, ECF No. 1-1; Am. Compl., Harmatz Decl. Ex. A at 15-16 ¶¶ 17,18, ECF No. 22.)

English promised DeCosta that, as part of DeCosta's compensation package, DeCosta would receive $150,000, producer credit, and funds on the back end of "Love Letters in the Sand" and $278,000 and funds on the back end of "Falashas."  (Compl. ¶¶ 12, 13, ECF No. 1-1; Am. Compl., Harmatz Decl. Ex. A at 16 ¶¶ 20, 21, ECF No. 22.)

Plaintiff alleges that she completed her tasks to defendants' satisfaction.  (Compl. ¶¶ 15, 16, ECF No. 1-1; Am. Compl., Harmatz Decl. Ex. A at 16 ¶¶ 23, 24, ECF No. 22.)  However, Plaintiff alleges that Defendants failed to make good on their promise to pay DeCosta.  (Am. Compl., Harmatz Decl. Ex. A at 17 ¶¶ 26, 27, ECF No. 22.)

**B.      Procedural History**

Plaintiff filed her original Complaint against defendants in the Superior Court of New Jersey on April 14, 2011.  (Compl., Apr. 14, 2011, ECF No. 1-1.)  The original complaint contained several claims, including breach of contract, tortious interference, conspiracy, fraud, and defamation.  (*Id.*)

On May 10, 2011, defendants removed this case to this Court.  (Notice of Removal, May 10, 2011, ECF No. 1)  Subsequently, defendants filed an Answer that included counterclaims for tortious interference, defamation, and breach of fiduciary duty, and breach of the duty of loyalty to BGE[1].  (Answer, May 11, 2011, ECF No. 2.)

The parties met on September 27, 2011 for a scheduling conference.  (Mandel Decl. ¶ 6, ECF No. 15-2.)  During the conference, the parties agreed that plaintiff would file an amended complaint.  (*Id.*)  The Court's September 27, 2011 Scheduling Order set October 27, 2011 as the deadline to file any motions to amend the pleadings or join parties.  (*Id.*; Scheduling Order at 2 ¶ 10, ECF No. 14.)

Plaintiff failed to file an amended complaint.  On October 28, 2011, defendants brought a motion to dismiss the original Complaint.  (Mot. to Dismiss, Oct. 28, 2011, ECF No. 15.)

---

[1]  The third count of Defendants' counterclaim states:

> 17.  To the extent that Counter-defendant Jennifer DeCosta establishes an employee-employer relationship and/or corporate officer relationship, the aforementioned conduct of Counter-defendant Jennifer DeCosta is a breach of her fiduciary duty to Counterclaimant BGE Productions LLC.

> 18.  To the extent that Counter-defendant Jennifer DeCosta establishes an employee-employer relationship and/or corporate officer relationship, the aforementioned conduct of Counter-defendant Jennifer DeCosta is a breach of her duty of loyalty to Counterclaimant BGE Productions LLC.

Following a telephone status conference with the parties, the Court allowed Plaintiff until November 29, 2011, to file any opposition to defendants' motion to dismiss.  (Order, Nov. 29, 2011, ECF No. 16.)  Instead of filing an opposition to defendants' motion to dismiss, and despite the fact that the deadlines had passed for filing an opposition and for filing a motion to amend, plaintiff moved for leave to file an amended complaint, which defendants opposed.  (Mot. to Am., Dec. 4, 2011, ECF No. 17; Opp'n to Mot. to Am., Dec. 20, 2011, ECF No. 19.)

On December 28, 2011, after a telephone status conference with the parties, the Court allowed plaintiff until January 13, 2012, to oppose defendants' motion to dismiss.  (Order, Dec. 28, 2011, ECF No. 21.)  Plaintiff failed to follow the Court's Order and, on January 20, 2012, the Court held another status conference with the parties.  (Reply at 1, ECF No. 23.)  At that time, the Court extended plaintiff's deadline to file an opposition brief to January 27, 2012.  (*Id.*)

On January 27, 2012, plaintiff filed an opposition to defendants' motion to dismiss that included an "updated" proposed amended complaint, which plaintiff titled a proposed "Second Amended Complaint," as an exhibit[2] (Pl.'s Opp'n at 2, ECF No. 22; Harmatz Decl. Ex. A, ECF No. 22.).  On January 31, 2012, the defendants filed a reply in further support of their motion to dismiss.  Defendants' reply addressed the facts and allegations contained in Plaintiff's newly

---

[2]  Therefore, plaintiff has now proposed two different versions of an amended complaint: (1) the version plaintiff proposed in her motion to amend (Mot. to Am., ECF No. 17-1); and (2) the "updated" version that plaintiff proposed in her opposition to defendants' motion to dismiss (Am. Compl., Harmatz Decl. Ex. A, ECF No. 22).  Plaintiff's approach is confusing to the Court and is procedurally awkward as it has no basis in Fed. R. Civ. P. 15(a).  However, given that plaintiff submitted the "updated" version while both motions were pending, and the updated version fills in many of the gaps underlying defendants' motion to dismiss plaintiff's claim for breach of contract, the Court will rely on this proposed version of the amended complaint in ruling on the motion to dismiss and the motion to amend the Complaint.  Therefore, subsequent references in this Opinion to the proposed Amended Complaint will refer to the version that plaintiff filed with her opposition to defendants' motion to dismiss, unless specified otherwise.

proposed amended complaint.  (Defs.' Reply, ECF No. 23.)

## II. <u>LEGAL STANDARD</u>

**A.  Motion to Dismiss**

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (internal quotations omitted). Rule 8 does not require "detailed factual allegations" but "demands more than an unadorned, the-defendant-unlawfully harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  "When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.   While detailed factual allegations are not necessary to survive a Rule 12(b)(6) motion, "a [pleader's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  In addition, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the *Twombly* pleading standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s].") (quoting *Twombly,* 550 U.S. at 556).

When examining the sufficiency of a litigant's pleading under Rule 12(b)(6), "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff[], and all inferences must be drawn in favor of them. *Eurofins Pharma*

*US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 158 (3d Cir. 2010).  The assumption of truth does not apply, however, to legal conclusions, which is to say that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that a pleader is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R. Civ. Proc. 8(a)(2)).

## B.  Motion for Leave to Amend Complaint

Federal Rule of Civil Procedure 15 permits a party to amend a pleading with the consent of the other parties or leave of court.[3]  Courts should freely give leave to amend "when justice so

---

[3]  The parties did not address Rule 16, which applies in this case because the deadline for amending the pleadings has passed. After the deadline to amend has passed, as it has here, a motion for leave to amend will be governed by both Rule 15 and Rule 16.

Under Fed. R. Civ. P. 16(b)(4), modification of a scheduling order occurs "only for good cause and with the judge's consent." *See, e.g.*, *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (finding no abuse of discretion where District Court denied motion to amend complaint filed six months after deadline in the scheduling order expired given absence of good cause and unexplained delay).  Whether good cause exists under Rule 16(b) depends upon the diligence of the party seeking to modify the scheduling order. *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007); Fed. R. Civ. P. 16, Advisory Committee Note (1983) ("the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension").  The Court has "great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Rule 16(b)." *Thoman v. Philips Med. Sys.*, No. 04-3698, 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (Brown, C.J.).

In this case, the Court finds that plaintiff's motion to amend, while presented in a procedurally awkward manner, does not violate Rule 16.  Plaintiff and defendants had several discussions about Plaintiff filing an amended complaint.  (Mot. to Dismiss at 1-2, ECF No. 15-1; Mot. to Am., Harmatz Decl. at ¶¶ 2, 3, ECF No. 17-2.)  Plaintiff anticipated amending the complaint by consent order under Rule 15(a). (Opp'n to Mot. to Dismiss, Harmatz Decl. ¶ 3); *See* Fed. R. Civ. P. 15(a) (stating that a party may amend its pleading with opposing party's written consent).  Despite several attempts, the parties failed to resolve their disagreement over the

(continued...)

-7-

requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The

decision to grant leave to amend rests within the discretion of the court.  *Foman*, 371 U.S. at 182.

Pursuant to *Foman*, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or

dilatory motive; (3) undue prejudice to the opposing party; or (4) futility of amendment. *Id.*; *see*

*also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (stating that "[l]eave to amend must

generally be granted unless equitable considerations render it otherwise unjust").

     An amendment will be considered futile if it "is frivolous or advances a claim or defense

that is legally insufficient on its face."  *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D.

463, 468 (D.N.J. 1990) (citations and quotations omitted).  In determining whether an amendment

is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard.  *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted).  The

question before the Court, therefore, is not whether the movant will ultimately prevail.  Rather, it is

whether the plaintiff is able to articulate "enough facts to state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570.

### III.  DISCUSSION

     Plaintiff's original Complaint contains seven counts, including allegations for breach of

contract, two counts for tortious interference, civil conspiracy, two counts for fraud, and

defamation.  (Compl., ECF No. 1-1.)  Plaintiff's proposed amended complaint contains four

---

[3](...continued)
amended complaint.  When those discussions broke down, and it became clear to plaintiff that
defendants would not consent to plaintiff filing the amended complaint, plaintiff filed the instant
motion to amend.  Therefore, although plaintiff has not proceeded in a procedurally textbook
manner, and in fact missed deadlines both to amend and to oppose defendants' motion, the Court
finds that she exercised a sufficiently reasonable level of diligence in pursuing the amendment
that good cause exists under Rule 16 to allow her to do so.

counts: (1) breach of contract (Count 1); (2) tortious interference (Count 2); (3) slander (Count 3); and (4) fraud (Count 4).  (Am. Compl., Harmatz Decl. Ex. A, ECF No. 22).

Defendants originally moved to dismiss all of the claims in plaintiff's original Complaint. However, in their reply brief, defendants acknowledge that, as to Count One (the breach of contract claim), the proposed amended complaint "adequately addresses the legal deficiencies identified in this motion."  (Reply Brief, ECF No. 23, at 3.)  Defendants oppose the other amendments to the Complaint on the basis of futility and undue prejudice.

Although plaintiff opposes defendants' motion to dismiss most of the claims, her opposition brief and motion to amend are silent on the civil conspiracy claim presented in Count Three of the original Complaint.  (*See* Pl.'s Opp'n, ECF No. 22.)  Also, plaintiff has not alleged civil conspiracy in the proposed amended complaint.  Therefore, the Court construes the omission as an abandonment of that claim.

Additionally, plaintiff's original complaint fails to state a claim for civil conspiracy for several reasons.  First, it failed to plead the facts necessary to establish a claim of civil conspiracy, including the dates of the conspiracy, the object of the conspiracy, and overt acts undertaken by co-conspirators to advance the conspiracy.  *Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 404 (D.N.J. 2008) ("[S]imply alleging that one defendant 'aided and abetted' or 'conspired with' another is insufficient even under the liberal pleading standard.").  Second, to the extent plaintiff relies on the alleged tortious interference as the underlying wrong, the Court, for reasons discussed herein, concludes that plaintiff has failed to adequately plead tortious interference in either the original Complaint or in the proposed amended complaint.

Finally, it appears that the conspiracy alleged in the complaint is limited to the defendants,

and does not plead any other individual or entity as a co-conspirator.  (Compl. ¶¶ 30-31, ECF No. 1-1).  The intra-corporate conspiracy doctrine provides that "an entity cannot conspire with one who acts as its agent."  *General Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 313 (3d Cir. 2003); *Sarteschi v. Commonwealth of Pennsylvania,* Civ. No. 06-2332, 2007 WL 1217858 (M.D. Pa. April 24, 2007).  In this case, the acts allegedly undertaken by defendant English appear limited to her official capacity as an officer of BGE.  *See, e.g.,* Compl. ¶¶ 8-18, ECF No. 1-1. Absent from the complaint is any allegation that defendant English acted in a personal capacity or outside of her corporate capacity.  Because a corporation cannot conspire with its agent, plaintiff's conspiracy claim does not plead a viable cause of action.

Accordingly, the Court will dismiss Count Three of the original complaint and only address the remaining claims below.

**A.  Breach of Contract**

The first count of plaintiff's original Complaint alleges that "Defendants breached their contractual duties and obligations owed to the plaintiff" and that plaintiff suffered injury as a result. (Compl. ¶¶ 23-25, ECF No. 1-1.)  Defendants argue that this claim should be dismissed because Plaintiff fails to identify the date of the contract or any of its terms.  (Mot. to Dismiss at 4-5, ECF 15-1.)

In Count One of the proposed amended complaint, DeCosta reasserts a claim for breach of contract and specifically alleges that Tony Locascio, an attorney friend, introduced her to Barbara English who was interested in making her book into a movie.  According to the proposed amended complaint, Locascio thought DeCosta's knowledge of "the industry" could help English.  (Am. Compl., Harmatz Decl. Ex. A at 14-15 ¶¶ 9-10, ECF No. 22.)  The proposed amended complaint

-10-

further alleges that after their conversation, DeCosta reached out to some of her contacts, and Locascio arranged a call with himself, DeCosta and English.  (*Id.* at 15 ¶¶ 11, 12, ECF No. 22.) English continued to contact DeCosta regularly for professional advice and guidance.  (*Id.* at 15 ¶ 13, ECF No. 22.)

      The proposed amended complaint further alleges that on or around May, 19, 2010, Locascio drafted a management contract between DeCosta and English and DeCosta was named as English's manager.  (*Id.* at 15 ¶ 15, 16, ECF No. 22.) .  At some point after English formed BGE Productions, English appointed DeCosta as Executive Vice President of BGE and, in exchange for her guidance, knowledge, and experience, defendants promised to compensate her.  (*Id.* at 15-16 ¶¶ 17, 18, 20, 21, ECF No. 22.)   DeCosta alleges that, despite the fact that she completed her tasks to defendants' satisfaction, defendants denied her the remuneration they had promised, thereby breaching their agreement.  (*Id.* at 16-17 ¶¶ 23, 24, 26, 27 ECF No. 22.)

      When plaintiff moved to amend, defendants argued that the claim was futile because the new allegations failed to identify the terms and conditions of the contract, the date the parties entered into the contract, and the specific services and guidance DeCosta allegedly provided. Defendants also argued that the claim failed to identify the alleged agreement between the parties and the breach.  (Opp'n to Mot. to Am. at 7, Dec. 20, 2011, ECF No. 19.)  However, as noted above, plaintiff subsequently proposed yet another version of an amended complaint in opposition to the motion to dismiss – the "Second Amended Complaint" – which defendants acknowledge states a valid claim for breach of contract under Fed. R. Civ. P. 12(b)(6).

      To properly plead a cause of action for breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4)

that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). For a court to find a valid contract, there must be "mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization." *D'Agostino v. Appliances Buy Phone, Inc.*, No. 3:10-cv-05415, 2011 WL 4345674, at *6 (D.N.J. Sept. 15, 2011).

The first issue is whether DeCosta has properly pled the elements of a breach of contract claim. The lenient pleading standard of Rule 8(a) applies to breach of contract claims and requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *3 (D.N.J. Mar. 17, 2008) (noting that in *Twombly*, "the Court reiterated that Rule 8(a) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face") (citation omitted).

Although the original Complaint failed to plead to the nature of the contract or how defendants breached the alleged agreement, and thus would not survive a motion to dismiss, the breach of contract claim in plaintiff's proposed amended complaint is sufficient. The proposed amended complaint provides facts regarding how plaintiff and defendants became acquainted, the nature of their relationship, and the management contract between the parties. (Am. Compl., Harmatz Decl. Ex. A at 14-15 ¶¶ 9-13, 15, ECF No. 22.) It also alleges that around May 2010, English secured DeCosta's services, and "named DeCosta as English's 'Manager.'" (*Id.* at 15 ¶¶ 16, ECF No. 22.) It further alleges that (1) English and BGE appointed DeCosta Executive Vice President of BGE and, as part of her compensation package, promised DeCosta $150,000, producer credit, and "funds on the back end on 'Love Letters in the Sand'" as well as $278,000 and "funds

on the back end on 'Falashas'" (*Id.* at 16 ¶¶ 18, 20, 21, ECF No. 22); (2) after receiving DeCosta's knowledge and efforts, Defendants breached the agreement by failing to pay DeCosta (*Id.* at 17 ¶¶ 26, 27, ECF No. 22), despite the fact that (3) DeCosta completed her tasks in accordance with the agreement and to Defendants' satisfaction (*Id.* at 16 ¶¶ 23, 24, ECF No. 22); and (4) DeCosta suffered damages as a result of the breach (*Id.* at 19 ¶¶ 42a-f, ECF No. 22).  Such allegations, taken in the light most favorable to DeCosta, give defendants fair notice of the claims against them and sufficiently state a claim for breach of contract.

DeCosta's failure to produce the contract or identify its terms and conditions with more specificity does not render the claim futile.  A concept central to American contract law is that "absent a statute to the contrary, an oral offer and acceptance constitutes a binding agreement." *Williams v. Vito*, 838 A.2d 556, 560 (N.J. Super. Ct. Law Div. 2003).  Moreover, at this stage of the litigation, "the Federal Rules do not require the Plaintiff to include the contract with the complaint, or allege specific provisions, or specify damages that were incurred."  *RehabCare Group East, Inc. v. Trenton Convalescent Operating Co.*, No. 06-2128, 2006 WL 2711496, at *2 (D.N.J. Sept. 20, 2006).  Rule 8 requires only that the complaint "provide fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814, 2007 WL 1756027, at *5 n. 4 (D.N.J. June 18, 2007).

Here, the Court finds that plaintiff has sufficiently pled a plausible claim for breach of contract.  As one court explained, plausibility requires only that the pleader supply enough details "to present a story that holds together," and courts will only ask "*could* these things have happened, not *did* they happen."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).  Plaintiff's proposed amended complaint goes beyond mere legal conclusions and

-13-

includes facts sufficient to put defendants on notice of the claims against them.  A complaint with enough factual matter may still proceed, even if "actual proof of [the] facts is improbable and that a recovery is very remote and unlikely," *Twombly,* 550 U.S. at 556 (citation omitted).  DeCosta's proposed amended complaint includes facts that have "nudged [her] claim[] across the line from conceivable to plausible." *Id.* at 570.  Thus, the proposed amended complaint survives the futility analysis under Fed. R. Civ. P. 12(b)(6).

Accordingly, the Court will allow plaintiff to amend the Complaint to include the breach of contract claim alleged in the proposed amended complaint.  However, as discussed below, the remaining claims must be dismissed and granting leave to amend those claims would be futile.

## B. Tortious Interference

Count Two and Count Seven of Plaintiff's original Complaint both seem to state claims for tortious interference.  Plaintiff alleges that "[D]efendants have purposefully and knowingly commenced upon a purposeful campaign to interfere with the business and personal relationships which DeCosta has held with third parties for many years." (Compl. ¶ 19, ECF No. 1-1.)  In Count Two, the complaint further alleges that "Defendants have failed [sic] tortuously [sic] interfered with the contractual relations and professional/business reputation of the plaintiff" and as a result, Plaintiff was injured.  (Compl. ¶¶ 27, 28, ECF No. 1-1.)  In Count Seven, Plaintiff claims that "Defendants have acted with the intent to tortuously [sic] interfere with the contractual and other relationships which the plaintiff has had with third parties," which caused injury to the Plaintiff. (Compl. ¶¶ 43, 44, ECF No. 1-1.)

Plaintiff's proposed amended complaint contains substantially similar allegations and claims that "[D]efendants sought to cause injury to plaintiff's professional relationship with Robert

Russell, Cindy Cooper, as well as the plaintiff's relationship with Josh Zandman" and "have

purposefully and knowingly commenced upon a purposeful campaign to interfere with the business

and personal relationships which DeCosta has held with third parties for many years."  (Am.

Compl., Harmatz Decl. Ex. A. at 17 ¶ 28, 29 ECF No. 22.)  It further alleges that "Defendants have

tortuously [sic] interfered with the contractual relations and professional/business reputation of the

plaintiff, thus creating the inability of the plaintiff to exercise business and financial rewards

flowing between the plaintiff and third parties."  (*Id.* at 17 ¶ 30, ECF No. 22.)  DeCosta also

alleges that "[D]efendants have purposefully contacted those who were associated with DeCosta

and create [sic] a riff between DeCosta and those who the plaintiff enjoyed a positive relationship."

(*Id.* at 17 ¶ 31, ECF No. 22.)  In addition, the Amended Complaint states that:

> The [D]efendants efforts to tortuously [sic] interfere with the activities of the
> plaintiff have caused injury to the reputation of the plaintiff in the business world,
> including, but not limited to, the plaintiff's ability to bring business projects to
> professionals, who will no longer work with the plaintiff or trust the plaintiff based
> upon the intentional actions of the defendants to damage the plaintiff."  (*Id.* at 17-18
> ¶ 32, ECF No. 22.)

Defendants argue that plaintiff's tortious interference claim fails, even as amended, because

plaintiff has not identified any contractual relationships or explained how defendants interfered

with any alleged contracts.  Defendants also argue that plaintiff's claim lacks sufficient details

regarding the alleged interference, such as when and with whom the interference occurred.  (Mot.

to Dismiss at 5-6, ECF No. 15-1; Opp'n to Mot. to Am. at 7-8, ECF No. 19.)

In *Printing Mart-Morristown v. Sharp Elec. Corp.*, the Supreme Court of New Jersey held

that a complaint alleging tortious interference must, at a minimum, set forth: (1) "facts that show

some protectable right – a prospective economic or contractual relationship"; (2) "facts claiming

that the interference was done intentionally and with malice"; (3) "facts leading to the conclusion that the interference caused the loss of the prospective gain"; and (4) that the injury caused the plaintiff damage.  116 N.J. 739, 751 (1989).  Malice here "is not used in the literal sense requiring ill will toward the plaintiff.  Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse."  *Id.* (quotations and citations omitted).

Here, DeCosta's original and proposed amended pleading both fail to identify any existing or prospective contractual or economic relationships with which defendants allegedly interfered. The facts also do not show any potential business or economic interest that plaintiff lost or could have acquired but for defendants' conduct. *See American Millennium Ins. Co.*, 332 Fed. App'x. 787, 790 (3d Cir. 2009) (affirming dismissal of tortious interference claim where pleading failed to identify a single, specific customer that was allegedly lost).  The complaints also fail to identify any conduct or facts showing how defendants purposefully "created a riff" between DeCosta and those with whom she enjoyed a "positive relationship."   Furthermore, no facts in either complaint sufficiently show that DeCosta even had potential clients or relationships with whom defendants interfered knowingly and with malice.  Such threadbare allegations do not raise DeCosta's "right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Thus, plaintiff's tortious interference claims, Counts Two and Seven, are dismissed.  The Court also finds that granting plaintiff leave to amend the tortious interference claim would be futile and denies that portion of plaintiff's motion to amend.

## C.  Slander

Plaintiff's original Complaint claims that defendants "launched a purposeful crusade to slander and liable [sic] the personal and professional reputation of DeCosta."  (Compl. ¶ 20, ECF

-16-

No. 1-1.)  At Count Six, the complaint further alleges that defendants have "purposefully

publish[ed] and communicat[ed] disparaging and knowingly false comments, as well as false

information concerning the plaintiff to third parties with the intent to cause injury to the plaintiff."

(*Id.* at ¶ 40.)  The Complaint also claims that, as a result, plaintiff was injured.  (*Id.* at ¶ 41.)

Plaintiff's proposed amended complaint similarly alleges that defendants have "launched a

purposeful crusade to slander and liable [sic] the personal and professional reputation of DeCosta"

and "acted in a manner to purposefully publish and communicate disparaging and knowingly false

comments, as well as false information concerning the plaintiff to third parties with the intent to

cause injury to the plaintiff."  (Am. Compl., Harmatz Decl. Ex. A. at 18 ¶ 33, 34, ECF No. 22.)  In

addition, the proposed amended complaint alleges that "defendants have communicated knowingly

false statements concerning the plaintiff to third parties, including, but not limited to Robert

Russell and Cindy Cooper, with the purposeful intent to create injury to the plaintiff."  (*Id.* at 18 ¶

35, ECF No. 22.)

Defendants argue that defamation "must be pled with particularity and must set forth the

defamatory statements, their utterer, and their publication."  (Mot. to Dismiss at 6-7, ECF No. 15-

1; Opp'n to Mot. to Am. at 9; ECF No. 19) (citing *Zoneraich v. Overlook Hospital*, 514 A.2d 53,

63 (N.J. App. Div. 1986).)  According to defendants, plaintiff's claims inadequately set forth any

alleged defamatory statements and must be dismissed.  (*Id.*)

Under New Jersey law, to establish a claim for defamation, "whether denominated libel or

slander, a plaintiff must show that the defendant communicated a false statement about the plaintiff

to a third person that harms the plaintiff's reputation in the eyes of the community or deters third

persons from associating with the plaintiff."  *Gumbs v. O'Connor*, No. 10-1520, 2011 WL

1322238, at *8 (D.N.J. Apr. 4, 2011) (citing *Dello Russo v. Nagel*, 358 N.J. Super. 254, 262-263

(N.J. Super. Ct. App. Div. 2003).  A complaint alleging defamation must identify the defamatory

words, the person who spoke them, and the fact of their publication.  *F.D.I.C. v. Bathgate*, 27 F.3d

850, 875 (3d Cir. 1994) (citing *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct.

App. Div. 1986)).  "A vague conclusory allegation is not enough."  *Zoneraich*, 514 A.2d at 63.

Here,  neither plaintiff's original Complaint nor her proposed amended complaint properly

states a claim for defamation.  Plaintiff's vague allegations fail to show how she was defamed and

do no more than state some of the elements of the cause of action without pleading facts to satisfy

those elements.  Without setting forth, at the very least, the nature of the alleged defamatory

statements, plaintiff fails to give defendants proper notice of her claim.  In addition, plaintiff has

failed to allege the circumstances in which the alleged statements were made to third parties.

Furthermore, plaintiff's proposed amended complaint includes no facts suggesting that whatever

statements were made harmed her reputation in the eyes of the community.  Thus, "the complaint

has alleged – but it has not 'show[n]' – 'that the [plaintiff] is entitled to relief.'" *Iqbal*, 129 S. Ct. at

1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Consequently, Count Six of plaintiff's original complaint is dismissed.  Similarly, the Court

finds that granting leave to amend the defamation claim would be futile, and denies plaintiff's

motion to amend the Complaint insofar as it seeks to add this claim.

## D.  Fraud

Counts Four and Five of plaintiff's original Complaint contain claims for fraud.  (Compl. at

¶¶ 33-35, 36-38, ECF No. 1-1.)  The Fourth Count alleges that defendants "committed fraud and

knowingly acted against the interests of the plaintiff," and that these acts directly and proximately

injured plaintiff.  (*Id.* at ¶¶ 34, 35.)  The Fifth Count alleges that because "defendants used unconscionable practices deception, fraud, false pretenses, false promises and misrepresentations" in dealing with plaintiff, plaintiff suffered injury.  (*Id.* at ¶¶ 37, 38.)

According to defendants, "Plaintiff's attorney indicated after the September 27, 2011 conference with the court that one count is 'fraud' and the other is 'common law fraud.'" (Mot. to Dismiss at 8, ECF No. 15-1.)  Defendants argue that, because "[t]here is no claim for statutory fraud or constructive fraud..., 'fraud' could only mean a claim for 'common law fraud.'" (*Id.*) Defendants also argue that the language in Count Five indicates that plaintiff's claim is being brought under the New Jersey Consumer Fraud Act, which fails because a consumer transaction has not been alleged.  (*Id.*)  In addition, defendants argue that plaintiff's fraud claims fail because Federal Rule of Civil Procedure 9(b) requires that fraud allegations "state with particularity the circumstances constituting fraud...."  Fed. R. Civ. P. 9(b).  Defendants claim that plaintiff has not plead fraud with the specificity required under Rule 9(b).  (*Id.*)

Plaintiff's proposed amended complaint contains only one count for fraud, Count Four. (Am. Compl., Harmatz Decl. Ex. A. at 18 ¶¶ 36-41, ECF No. 22.)  Because nothing indicates that plaintiff is alleging violations of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-2) (West 2012), and because the New Jersey Consumer Fraud Act clearly does not apply to this case[4],

---

[4]  In *Daaleman v. Elizabethtown Gas Co.*, the Supreme Court of New Jersey explained that "[t]he Consumer Fraud Act... is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate."  390 A.2d 566, 568 (N.J. 1978).  The Court explained that "the legislative concern was over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices."  *Id.* at 569.  The instant claim does not arise out of a consumer or real estate transaction or advertisement, and DeCosta is not a "consumer" in her dealings with

(continued...)

-19-

the Court will address Count Four of the proposed amended complaint as a claim for common law fraud.

Plaintiff's proposed amended complaint alleges that "Defendants committed fraud and knowingly acted against the interests of the plaintiff by securing the hard work, dedication, and talents of the plaintiff, with the intent to not provide remuneration for such efforts of the plaintiff." (*Id.* at 18 ¶ 36, ECF No. 22.)  It also alleges that "Defendants sought to receive the benefit of the plaintiff's knowledge by persuading the plaintiff to work for the defendants with a promise that the plaintiff would be compensation [sic] for such work," but that "[D]efendants did not at any time ever possessed [sic] the actual intent to issue payment to the plaintiff."  (*Id.* at 18 ¶¶ 37, 38, ECF No. 22.)  In addition, Plaintiff claims that "Defendants used unconscionable practices, deception, fraud, false pretenses, false promises and misrepresentations in their dealings with the plaintiff." (*Id.* at 19 ¶ 41, ECF No. 22.)

Plaintiff also claims that defendants had Locascio draft a contract yet "consistently informed the plaintiff that the defendants were unable to sign the instrument due to a 'printer problem,' thus extracting professional services from the plaintiff, without the intent to ever issue remuneration to the plaintiff, yet having the plaintiff rely on the subject contract as valid."  (*Id.* at 19 ¶ 39, ECF No. 22.)  Finally, Plaintiff alleges that from May 2010, until the parties' relationship ended, defendants "purposefully sought to reap rewards to benefit the defendants at the expense and loss of the plaintiff."  (*Id.* at 19 ¶ 40, ECF No. 22.)

Defendants argue that these claims also fail to identify the alleged fraud with sufficient

---

[4](...continued)
Defendants.  Thus, the Act does not apply here.

particularity.  (Opp'n to Mot. to Am. at 9, ECF No. 19.)  The Court disagrees and finds that the fraud claim set forth in Count 4 of the proposed amended complaint pleads it with the requisite particularity to survive scrutiny under the Rule 12(b)(6) standard.

"To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

In addition, Federal Rule of Civil Procedure 9(b)'s particularity requirement applies to all pleadings of fraud.  Rule 9(b) requires that "[i]n alleging fraud..., a party must state with particularity the circumstances constituting [the] fraud...."  Fed. R. Civ. P. 9(b).  The purpose of Rule 9(b)'s heightened pleading requirements is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).  "[A]llegations of date, place or time fulfill these functions" but are not required.  *Id*.  "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Id.*

In this case, the proposed amended complaint satisfies those standards.  Plaintiff alleges that defendants fraudulently induced her to apply her knowledge of the movie industry for defendants' benefit and to perform work for defendants by: (1) promising plaintiff $150,000, producer credit, and back-end funds for "Love Letters in the Sand" (Am. Compl., Harmatz Decl. Ex. A. at 16 ¶ 20, ECF No. 22); and (2) promising plaintiff $278,000 and back-end funds for

-21-

"Falashas" (Am. Compl., Harmatz Decl. Ex. A. at 16 ¶ 21).  The proposed amended complaint also

alleges that defendants never actually intended to compensate or reward plaintiff.  (Am. Compl.,

Harmatz Decl. Ex. A. at 18 ¶ 38.)  The proposed amended complaint alleges as well that

defendants caused plaintiff to rely on a draft contract written by Locascio, but told plaintiff the

parties could not sign the contract due to a "printer problem," when in fact defendants never

intended to remunerate the plaintiff.  (Am. Compl., Harmatz Decl. Ex. A. at 18-19 ¶ 39.)

These allegations sufficiently plead fraud with particularity, and adequately place

defendants on notice of the conduct allegedly underlying the fraud claim.  Additionally, the

materiality of the representations is manifest – simply stated, defendants allegedly promised

plaintiff significant sums of money for her assistance with their projects.  Accordingly, the Court

will grant plaintiff's motion to amend as to Count 4 of the proposed amended complaint.

### E.    Relief Requested

Defendants' Motion to Dismiss argues that some of the relief DeCosta seeks in her original

Complaint, such as attorneys' fees, punitive, consequential and incidental damages, should be

stricken from the complaint.  (Mot. to Dismiss at 10, ECF No. 15-1.)  Plaintiff's opposition is

silent on defendants' motion to dismiss plaintiff's claims for attorneys' fees, punitive,

consequential and incidental damages.  Plaintiff's proposed amended complaint does not seek any

of these remedies (*see* Am. Compl., Harmatz Decl. Ex. A at 19 ¶ 42 a-f, ECF No. 22.), and the

Court thus concludes that plaintiff has abandoned them.  Therefore, the Court will not address

them.[5]

---

[5]  The Court also notes that in New Jersey, attorneys' fees are not ordinarily recoverable
unless they have been expressly authorized by statute, court rule, or contract.  *State, Dep't of*

(continued...)

**F.       Undue Delay and Undue Prejudice**

As explained above, the Court has determined that it would be futile to grant Plaintiff leave to amend all but the claims for breach of contract and common-law fraud.  The Court must still determine whether leave to amend the breach of contract and fraud claims should be denied based on a finding of undue delay, bad faith or prejudice to the opposing party.  *See Foman*, 371 U.S. at 182.

Defendants argue that plaintiff's motion to amend should not be granted because it is untimely and granting leave to amend would be prejudicial.  Defendants claim that plaintiff's "[n]on-compliance with Court Rules, Court directives, and repeated requests is prejudice." Defendants also argue that their inability to understand plaintiff's claims or obtain discovery for the first nine months of the litigation amounts to prejudice, thus the motion to amend should be denied.  (Opp'n to Mot. to Am. at 5, 11, ECF No. 19.)

Plaintiff argues that granting leave to amend will not prejudice defendants because the trial is still many months away and the proposed amended complaint would remedy Defendants' concerns with the original Complaint. (Mot. to Am. at 3, ECF 17-4.)

With regard to undue delay and undue prejudice, the Court of Appeals for the Third Circuit has stated:

> [t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become undue, placing an unwarranted burden on the court, or will

---

[5](...continued)
*Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 166 (N.J. 1983); *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 (3d Cir. 1990).  Here, DeCosta has not alleged that her agreement with Defendants includes a provision for attorneys' fees nor has she alleged a statute or court rule under which she may be entitled to recover attorneys' fees.

> become prejudicial, placing an unfair burden on the opposing party.
> The question of undue delay, as well as the question of bad faith,
> requires that we focus on the plaintiff's motives for not amending the
> complaint to assert this claim earlier; the issue of prejudice requires
> that we focus on the effect on the defendants.

*Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir.1984) (internal citations and quotation marks

omitted); *see also Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (stating that "the question of

undue delay requires that we focus on the movant's reasons for not amending sooner" and the issue

of prejudice focuses on hardship to the nonmovant if the amendment is permitted).  Delay may

become undue where the moving party failed to take advantage of previous opportunities to amend.

*See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

Neither undue delay nor undue prejudice supports denying leave to amend the breach of

contract and fraud claims.  Plaintiff's inability to comply with the Court's deadlines is perplexing

and has resulted in delays in this case proceeding.  However, nothing indicates that granting leave to

amend this claim would place an unwarranted burden on the Court.  Moreover, the proposed

amended complaint contains substantially the same allegations as the original Complaint.  Thus, the

amendment will not further delay resolution of this case.

The Court must also consider whether granting leave to amend the breach of contract count

would create undue prejudice. Here, the Court must balance the liberal interpretation to be afforded

Rule 15, and the goal that "a particular claim will be decided on the merits rather than on

technicalities," *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990), with "the hardship to the

defendants if the amendment were permitted."  *Cureton v. NCAA*, 252 F.3d at 273.  "Unfair

prejudice is usually found when there has been a significant unjustified delay in moving to amend

that creates an unfair disadvantage for the defendant."  *Joy v. Perez*, No. 10-cv-01636, 2011 WL

-24-

221700, at *2 (D.N.J. Jan. 21, 2011).

The Court finds that allowing plaintiff to amend the breach of contract and fraud claims would not be unduly prejudicial to defendants.  Plaintiff's proposed amended complaint only includes additional facts.  It does not allege any new theories or add new parties.  Accordingly, allowing plaintiff leave to amend will not require any new or unforseen discovery or alter the litigation to any substantial degree.

## IV.  CONCLUSION

For the reasons discussed, the Court will grant Defendants' motion to dismiss and grant in part and deny in part DeCosta's motion for leave to amend the Complaint.  Plaintiff is granted leave to file an amended complaint that asserts the breach-of-contract and fraud claims proposed as Counts One and Four in the proposed amended complaint that plaintiff submitted in opposition to defendants' motion to dismiss (Harmatz Decl., Ex. A, ECF No. 22).  An appropriate Order accompanies this Opinion.

s/ *Michael A. Hammer*
UNITED STATES MAGISTRATE JUDGE